1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOHAMUD SHARAWE, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INDIAN HARBOR INSURANCE COMPANY, a foreign insurer,<br><br>Defendant. | CASE NO. 2:21-cv-01466-JHC<br><br>ORDER |

## I.

### INTRODUCTION

This matter comes before the Court on Defendant Indian Harbor Insurance Company's

Motion to Dismiss (Dkt. # 10) and Plaintiff Mohamud Sharawe's Motion to Certify Questions to

the Washington State Supreme Court (Dkt. # 18).  Having considered the pleadings in support of

and in opposition to the motions, the applicable law, and the file herein, the Court DENIES

Plaintiff's motion, GRANTS in part Defendant's motion, and DISMISSES this action without

prejudice and with leave to amend.

ORDER - 1

**II.**

**BACKGROUND**

On or around January 20, 2019, Plaintiff Mohamud Sharawe was involved in an

automobile accident while working for Lyft, a rideshare service.  Dkt. # 1–1 at ¶¶ 6.1–2.

Plaintiff's 2012 Toyota Prius sustained damage in the accident.  *Id.*  At the time, an Indian

Harbor automobile insurance policy, which included coverage for physical damage, covered the

vehicle.  *Id.* at ¶ 6.1.  Plaintiff submitted a claim to Indian Harbor following the accident.  *Id.* at

¶ 6.3.  On or about January 22, 2019, Indian Harbor determined that Plaintiff's vehicle was a

total loss.[1]  *Id.* at ¶ 6.5.

The insurance policy here states that Indian Harbor may settle a total loss claim by

paying the insured the "actual cash value" ("ACV") of the vehicle minus the applicable

deductible.  Dkt. # 1–1 at ¶ 5.3.  Indian Harbor uses a third-party valuation service operated by

Mitchell International, Inc. ("Mitchell") to determine the ACV of consumer vehicles.  *Id.* at

¶ 5.9.  In calculating the ACV of Plaintiff's vehicle, Mitchell identified several comparable

vehicles and applied adjustments to account for differences between those vehicles and

Plaintiff's vehicle, such as differences in mileage and vehicle configuration.  *Id.* at ¶ 6.9.  For

each comparable vehicle, Mitchell also deducted from the base price a "Projected Sold

Adjustment" ("PSA") of about seven percent as an "adjustment to reflect consumer purchasing

behavior (negotiating a different price than the listed price)."  *Id.* at ¶¶ 6.10–11.

This lawsuit arises from Plaintiff's disagreement with the valuation method used in

calculating the actual cash value of his vehicle.  Dkt. # 1–1 at ¶¶ 6.15–19.  Plaintiff brings

several causes of action based on Defendant's use of the Mitchell valuation report.  All the

---

[1] Indian Harbor deems a vehicle to be a total loss when it is uneconomical to repair it, i.e., when
the cost to repair the vehicle exceeds its "actual cash value."  Dkt. #1–1 at ¶ 5.4.

ORDER - 2

causes of action rely on the assertion that application of the PSA violates section 284-30-391 of the Washington Administrative Code ("WAC"), which regulates total loss settlements in Washington. *Id.* at ¶¶ 7.8, 8.3, 9.3, 10.4, 11.3.

Plaintiff filed his complaint as a putative class action on September 24, 2021 in King County Superior Court. Dkt. # 1–1. Defendant removed the case on October 27, 2021. Dkt. # 1. Defendant moved to dismiss under Fed. R. Civ. Pr. 12(b)(6) on November 24, 2021. Dkt. # 10.

On February 11, 2022 the Ninth Circuit decided *Lara v. First National Insurance Co. of America,* 25 F.4th 1134 (9th Cir. 2022), which addresses the burden on plaintiffs to show "actual harm" in insurance consumer actions. Plaintiff then filed a Motion to Certify Questions to the Washington State Supreme Court on June 9, 2022, arguing that the *Lara* court did not address several questions of law that will drive the instant case and have far-reaching policy implications for similar cases in Washington. Dkt. # 18.

### III.

### ANALYSIS

A.  Plaintiff's Motion to Certify Questions to the Washington State Supreme Court

Because Plaintiff's motion concerns the proper application of *Lara* to this case, the Court addresses it before ruling on Defendant's Motion to Dismiss. Plaintiff argues that certification is necessary to clarify the proper measure of damages for alleged violations of WAC § 284-30-391 in the context of unauthorized deductions, since the issue has far-reaching policy implications for the viability of bad faith and Consumer Protection Act claims in Washington. *Id.* Plaintiff asserts that the *Lara* court did not speak directly to this issue and that its conclusions as to the plaintiff's burden to show actual harm are merely "dicta." *Id.* Plaintiff also argues that *Lara* does not affect Defendant's motion to dismiss. *Id.*

The decision whether to certify a question to the Washington State Supreme Court rests in the discretion of the federal court. *Murray v. BEJ Mins., LLC*, 924 F.3d 1070, 1071 (9th Cir. 2019) (*citing Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).  Courts may certify questions to the Washington State Supreme Court when ascertaining local law is necessary to dispose of the proceeding, and when that local law has not been "clearly determined." Wash. Rev. Code § 2.60.020.  But federal courts need not use the certification process even if the state law is unclear. *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1009 (9th Cir. 2009) (*citing Lehman Bros.*, 416 U.S. at 390).  Further, "[c]ertification is not appropriate where the state court is in no better position than the federal court to interpret the state statute." *Micomonaco v. State of Wash.*, 45 F.3d 316, 322 (9th Cir. 1995).  In deciding whether to exercise discretion, the Court considers: "(1) whether the question presents important public policy ramifications yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) the spirit of comity and federalism." *Murray*, 924 F.3d at 1072 (internal citations omitted).

Plaintiff has not provided a compelling reason for certification.  As for the *Murray* factors, he asserts that the issue is "yet unresolved" because there is no Washington appellate authority "interpreting Section 391," establishing the "definition of ACV in the context of Section 391," or analyzing "the relationship between ACV, as determined by a Section 391(2) valuation methodology, and Plaintiffs and Class Members' 'actual harm.'" Dkt. # 18 at 7.  He also asserts that the issue is "new, substantial, and of broad application" because the *Lara* court "appears to substantially increase the burden on plaintiffs" to show actual harm in insurance consumer actions.  Dkt. # 18 at 2.

But as explained in more detail below, Plaintiff's motion misconstrues the holding in *Lara* in several respects.  First, the questions that Plaintiff proposes certifying to the Washington

ORDER - 4

State Supreme Court have been squarely addressed and decided in *Lara*.  The *Lara* court

analyzed WAC § 284-30-391, Washington case law, and Fed. R. Civ. P. 23, which it was capable

of and empowered to interpret.  It concluded that the ACV means the "fair market value" and

not, as the plaintiffs there argued, the number arrived at through compliance with the process laid

out in the insurance regulations.  *Lara,* 25 F.4th at 1136.  It also held that plaintiffs must show

"actual harm" apart from a violation of the regulations.  *Id.*  These conclusions are not dicta, as

Plaintiff suggests, but central to *Lara*'s holding that class certification was inappropriate because

of the individualized inquiry necessary to prove injury for each plaintiff.  By asking for

certification, Plaintiff effectively asks the Court to ignore *Lara* and potentially obtain a

conflicting decision from the Washington State Supreme Court.  Further, the Ninth Circuit did

not "substantially increase" the burden on plaintiffs to show actual harm; it merely clarified long-

standing Washington law, which has always required proof of injury in breach of contract and

CPA claims.  *Lara*, 25 F.4th at 1139.  The rest of Plaintiff's brief generally references federalism

and principles of comity but does not provide convincing arguments for certification.  *See*

*Kremen v. Cohen,* 325 F.3d 1035, 1037 (explaining that courts "invoke the certification process

only after careful consideration and do not do so lightly.").

Therefore, the Court declines to burden the Washington State Supreme Court with

questions that have been directly and fairly resolved by the federal courts.  And the Court notes

that, should Plaintiff appeal this Order, he may still ask the Ninth Circuit to certify these

questions.  *See* RCW § 2.60.020.  Having determined that *Lara* squarely addresses the legal

questions at issue, the Court now turns to Defendant's Motion to Dismiss.  Dkt. # 10.

B.  Rule 12(b)(6) Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the court construes the complaint in the light most favorable to the non-moving party.  *Livid*

*Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677–78. Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the lack of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

C. *Lara*

The Ninth Circuit's decision in *Lara* makes clear that Plaintiff has not alleged sufficient injury to sustain his claim and that, based on the pleadings, he lacks standing.

*Lara* similarly concerned an insurance company's valuation method for calculating the ACV of totaled vehicles in Washington. *Lara,* 25 F.4th at 1136. The plaintiffs sued both Liberty Mutual, an auto insurer, and CCC Intelligent Solutions, a company that Liberty contracts with to develop its valuations, on behalf of a proposed class. *Id.* They alleged that the valuation method the defendants used to calculate actual cash value, which involved application of a downward "condition adjustment," systematically undervalued vehicles in violation of the Washington Administrative Code. *Id.* The plaintiffs argued that pleading a violation of the Washington insurance regulations sufficed to sustain their claims. *Id.* at 1139–40. The district court denied a motion for class certification, finding that individual questions predominated over

common questions and that individualized trials were superior to a class action.  The plaintiffs appealed.  *Id.* at 1136.

The Ninth Circuit rejected the theory that a plaintiff may show injury merely by proving that the insurer failed to follow Washington's regulatory process for determining ACV.  It explained that "[a] violation of the regulation isn't a breach . . . [because b]reach of contract requires not just a violation of the terms of the contract but also an injury."  *Lara,* 25 F.4th at 1139.  And it reasoned that deductions that deviate from the "prescribed [regulatory] process" do not show injury.  *See id.* at 1140 ("Plaintiffs essentially ask for a strict liability remedy which is not provided by their causes of action").  *Lara* also explains that simply "calling Defendants' adjustments 'illegal'" cannot show an injury because even an adjustment that deviates from the regulatory process might still lead to the correct ACV.  *Id.* at 1140.  The *Lara* court thus concluded that because the causes of action require proof of an injury, the district court was correct to apply the old basketball phrase, "no harm, no foul."  *Id.*

In the context of a putative class action, the *Lara* court held that an insurer "only owe[s] each putative class member the actual cash value of his or her car, [and] if a putative class member was given that amount or more, then he or she cannot win on the merits."  *Lara*, 25 F.4th at 1139.  Because the calculation of actual cash value is an individualized inquiry, it found that the district court had not abused its discretion in finding that common questions did not predominate and that individualized trials were superior to a class action.  *Id.* at 1140.

D.  *Lara*'s Application to this Case

The Ninth Circuit's holding in *Lara* compels dismissal of Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6).  Although *Lara* involved review of a denial of a motion for class certification, its conclusion that a plaintiff must show "actual harm" beyond simply a violation of the regulations applies with equal force to Plaintiff's claims.  As Plaintiff admits in his briefing,

he is "not so much alleging that Indian Harbor breached its contract by failing to pay the actual cash value of vehicles deemed a total loss but alleging that Indian Harbor engaged in an improper valuation process." Dkt. # 14 at 15–16.  This position is fatal under *Lara* because Plaintiff bears the burden of showing that what Indian Harbor offered is less than the ACV for his vehicle.  25 F.4th at 1139.

Second, Plaintiff does not allege what the correct ACV should be for his vehicle.  He instead argues that "in this context, the 'fair market value' can only be determined by strict compliance with WAC 284-30-391." Dkt. # 14 at 9.  But the Ninth Circuit in *Lara* rejected Plaintiff's position when it found no merit in the theory "that the only possible definition of 'actual cash value' in the regulations is the value given by the prescribed process." *Lara,* 25 F.4th at 1140.  Therefore, to sustain his claim under *Lara,* Plaintiff must allege that he was paid less than the true ACV of his vehicle.

Third, Plaintiff cannot meet his burden to show injury by labeling the deductions "illegal," as *Lara* makes abundantly clear.  *Lara,* 25 F.4th at 1140 (rejecting the notion that "calling Defendants' adjustments 'illegal'" is proof of injury).  Plaintiff states in his response brief that "efforts by insurers to use additional, unenumerated criteria to reduce payments are illegal." Dkt. # 14 at 11.  But given the broad pronouncement in *Lara* that a regulatory violation is not evidence of injury, this statement does not suffice to meet the requisite elements of Plaintiff's claims.  Rather, even if the valuation method used by Indian Harbor is "illegal" in that it violates Washington insurance regulations, this fact alone does not sustain a cognizable legal theory of breach of contract or unfair trade practices under *Lara.*

Plaintiff does not convincingly argue that this case is distinguishable from *Lara.*  His Response to Defendant's Motion to Dismiss, and all the cases cited in it, predate *Lara*.  *See, e.g.,*

ORDER - 8

Dkt. # 14 at 2. [2]  He attempts to distinguish *Lara* only in his Reply to Defendant's Response to Plaintiff's Motion to Certify Questions to the Washington State Supreme Court, Dkt. # 25, but his arguments there are unpersuasive.  First, he contends that he has met the requirement to show "harm" as envisioned in *Lara* through his statement that he is entitled to recover "the difference between payments made by Indian Harbor for actual cash value in the event of a total loss, and the ACV that Indian Harbor would have determined without breaching its contractual obligations to Plaintiff and other Class Members."  Dkt. # 25 at 7 (citing Plaintiff's Complaint, Dkt. # 1–1 at ¶ 7.11).  But this allegation is circular because it defines injury with reference to a "breach of contract," which *Lara* states requires a showing of "not just a violation of the terms of the contract but also an injury."  *Lara,* 25 F.4th at 1139.  Further, alleging that Plaintiff is entitled to the difference between the ACV and the number calculated by Defendants using the Mitchell report is distinct from alleging that there *is* a difference between the two values, and that Plaintiff is entitled to that difference.  *C.f. Lara,* 25 F.4th at 1140 (explaining that even an adjustment that deviates from the regulatory process might still lead to the correct ACV).  Plaintiff also attempts to distinguish *Lara* by asserting that the subject condition adjustment in *Lara* was "far more individualized" and included parties who were not paid using a CCC valuation, while Indian Harbor's PSA appears to be a uniform reduction applied to all members of his proposed class.

---

[2] Plaintiff relies on *Ngethpharat v. State Farm Mut. Auto. Ins. Co.,* 499 F. Supp. 3d 908 (W.D. Wash. 2020), a case in which the Western District of Washington certified a similar class based on this legal theory, to support many of his arguments.  *See* Dkt. # 14 at 9, 10, 11, 12–13.  But the district court revisited the holding of that case after *Lara* was decided, vacating the certification orders and granting summary judgment for State Farm.  *Ngethpharat v. State Farm Mut. Auto. Ins. Co.*, No. C20-454 MJP, 2022 WL 1404526, at *5 (W.D. Wash. May 4, 2022).  Contrary to Plaintiff's assertion that this change of course is evidence of "conflicting statutory interpretations" within the jurisdiction, Dkt. # 25 at 2, the *Ngethpharat* case is simply an example of a situation where the Ninth Circuit clarified the law on an issue, and the district court then adhered to its binding holding.  The district court consolidated *Ngethpharat* with *Jama v. State Farm Fire and Cas. Co.,* C20-652 MJP, which Plaintiff also cites.  The reconsideration of the class certification therefore applied to both cases.  The case is currently on appeal to the Ninth Circuit.

ORDER - 9

But the Ninth Circuit rejected this possible point of distinction in *Lara*.  There, it considered the example of a "plaintiff whose car was valued using the CCC report with the disputed condition adjustment, and for whom Liberty [the insurer] used CCC's estimate without making further adjustments."  *Lara*, 25 F.4th at 1139.  It stated that, "[e]ven for that plaintiff', the district court would have to look into the actual value of the car, to see if there was injury."  *Id.*  This conclusion applies squarely to Plaintiff's claims; per *Lara*, he must still allege that the ACV was more than what was offered and paid, and his failure to do so here dooms his claim.  *Id.*

Plaintiff's failure to allege injury and damages is just as fatal to his claims of bad faith and breach of the implied covenant of good faith and fair dealing.  Just as with Consumer Protection Act and breach of contract claims, these two claims require proof of injury and damages.  *See Smith v. Safeco Ins. Co.,* 150 Wash. 2d 478, 485, 78 P.3d 1274 (2003) ("Claims by insureds against their insurers for bad faith are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty.").  All of Plaintiff's claims rely on the premise that the insureds received less than the ACV—what was owed by contract—which under *Lara* means that they must show actual damages, not just a regulatory violation.  Lastly, Plaintiff's claim for declaratory and injunctive relief similarly fails because it relies on the other causes of action.

## IV.

### CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion to Certify Questions to the Washington State Supreme Court, DISMISSES Plaintiff's claims without prejudice, and GRANTS Plaintiff leave until Friday, July 29, 2022 to file an amended complaint.  If Plaintiff wishes to sustain his claims, he must allege that he was paid less than the true ACV of his vehicle.  The Court does not foreclose the re-filing of an amended complaint in the form of a

ORDER - 10

putative class action but notes that the *Lara* court determined that damages in these types of

actions are typically subject to an individualized inquiry.  The Court strikes Defendant's Motion

to Compel Appraisal and Stay Litigation (Dkt. # 12) as moot.

        Dated this 14th day of July, 2022.

John H. Chun
United States District Judge

ORDER - 11